**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

**LEONARD HINTON,**

Plaintiff,

- v -

Civ. No. 9:12-CV-1844
(LEK/RFT)

**A. PRACK**, *Commissioner's Designee,*
**D. VENETTOZZI**, *Commissioner's Designee,*
**S. BULLIS**, *Hearing Officer*, **D. HAUG**, *Hearing Officer*, **D. ROCK**, *Superintendent; Upstate Correctional Facility*, **UHLER**, *Deputy Superintendent of Security; Upstate Correctional Facility,*

Defendants.

**APPEARANCES:**

**LEONARD HINTON**
Plaintiff, *Pro Se*
96-A-0837
Franklin Correctional Facility
P.O. Box 10
Malone, NY 12953

**HON. ERIC T. SCHNEIDERMAN**
Attorney General of the State of New York
Attorney for Defendants
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

**OF COUNSEL:**

**JOSHUA E. McMAHON, ESQ.**
Assistant Attorney General

## <u>REPORT-RECOMMENDATION and ORDER</u>

*Pro se* Plaintiff Leonard Hinton brings this action, pursuant to 42 U.S.C. § 1983, alleging

that Defendants violated his right to due process at three separate disciplinary hearings. *See* Dkt.

No. 1, Compl. Plaintiff has moved for summary judgment. Dkt. No. 39. Defendants oppose that

Motion, and Cross-Move for Summary Judgment. Dkt. No. 42. Plaintiff opposes Defendants'

Cross-Motion. Dkt. Nos. 44, Pl.'s Opp'n, & 45, Pl.'s Supp. Opp'n. For the reasons that follow, we

recommend that Plaintiff's Motion for Summary Judgment be **DENIED**, Defendants' Cross-Motion

for Summary Judgment be **GRANTED**, and that this action be **DISMISSED**.

## I. STANDARD OF REVIEW

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

The moving party bears the burden to demonstrate through "pleadings, depositions, answers to

interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine

issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp.

v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis

of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in

accordance with local court rules, served a concise statement of the material facts as to which it

contends there exist no genuine issues to be tried, those facts will be deemed admitted unless

properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d

Cir. 1992).

To defeat a motion for summary judgment, the non-movant must set out specific facts

showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the

facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287

(2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion

for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings,

Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more

than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

When considering cross-motions for summary judgment, a court "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Hotel Employees & Rest. Employees Union, Local 100 of N.Y. v. City of N.Y. Dep't of Parks & Recreation*, 311 F.3d 534, 543 (2d Cir. 2002) (quoting *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993)). "[N]either side is barred from

asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it . . . [and] a district court is not required to grant judgment as a matter of law for one side or the other." *Heublein, Inc. v. United States*, 996 F.2d at 1461.

## II. DISCUSSION

### A. Due Process

Plaintiff alleges that Defendants violated his right to due process at three separate disciplinary hearings. *See generally* Compl.

The Due Process Clause of the Fourteenth Amendment protects against restraints or conditions of confinement that "exceed[] the sentence in . . . an unexpected manner[.]" *Sandin v. Conner*, 515 U.S. 472, 484 (1995). To state a due process claim under § 1983, an inmate must first establish that he enjoys a protected liberty interest. *Arce v. Walker*, 139 F.3d 329, 333 (2d Cir. 1998) (citing *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). Inmates' liberty interests are derived from two sources: (1) the Due Process Clause of the Fourteenth Amendment; and (2) state statute or regulations. *Id.* With regard to liberty interests arising directly under the Due Process Clause, the Supreme Court has "narrowly circumscribed its scope to protect no more than the 'most basic liberty interests in prisoners[,]'" *Arce v. Walker*, 139 F.3d at 333 (quoting *Hewitt v. Helms*, 459 U.S. 460, 467 (1983)), and limited to freedom from restraint that "exceed[] the sentence in . . . an unexpected manner[,]" *Sandin v. Conner*, 515 U.S. 472, 478 (1995).

Turning to liberty interests created by the state, the Supreme Court states that such liberty interests shall be limited solely to those deprivations which subject a prisoner to "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. at 484; *see also Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001) (citing *Sandin*); *Welch v.*

*-4-*

*Bartlett*, 196 F.3d 389, 392 (2d Cir. 1999).

Factors relevant to an analysis of what constitutes an atypical and significant hardship include "(1) the effect of the confinement on the length of prison incarceration, (2) the extent to which the conditions of segregation differ from other routine prison conditions, and (3) the duration of the disciplinary segregation compared to discretionary confinement." *Spaight v. Cinchon*, 1998 WL 167297, at *5 (N.D.N.Y. Apr. 3, 1998) (citing *Wright v. Coughlin*, 132 F.3d 133, 136 (2d Cir. 1998)); *see also Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (stating that in assessing what constitutes an atypical and significant hardship, "[b]oth the conditions [of confinement] and their duration must be considered, since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical" (citation omitted)). Though the length of the confinement is one guiding factor in a *Sandin* analysis, the Second Circuit has cautioned that "there is no bright-line rule regarding the length or type of sanction" that meets the *Sandin* standard. *Jenkins v. Haubert*, 179 F.3d 19, 28 (2d Cir. 1999) (citations omitted). Nevertheless, the Court of Appeals has stated that "[w]here the plaintiff was confined for an intermediate duration – between 101 and 305 days – development of a detailed record' of the conditions of the confinement relative to ordinary prison conditions is required." *Palmer v. Richards*, 364 F.3d at 64-65 (quoting *Colon v. Howard*, 215, F.3d 227, 232 (2d Cir. 2000)); *see also Hanrahan v. Doling*, 331 F.3d 93, 97-98 (2d Cir. 2003) ("[W]here the actual period of disciplinary confinement is insignificant or the restrictions imposed relatively minor, such confinement may not implicate a constitutionally protected liberty interest."); *Edmonson v. Coughlin*, 1996 WL 622626, at *4-5 (W.D.N.Y. Oct. 4, 1996) (citing cases for the proposition that courts within the Second Circuit tend to rule, as a matter of law, that "disciplinary keeplock or SHU

confinement to 60 days or less in New York prisons is not an atypical or significant hardship in relation to the ordinary incidents of prison life"); *Sims v. Artuz*, 230 F.3d 14, 23 (2d Cir. 2000) (noting that segregative sentences of 125-288 days are "relatively long" and therefore necessitate "specific articulation of . . . factual findings before the district court could properly term the confinement atypical or insignificant"). Accordingly, the court must "make a fact-intensive inquiry" that would examine the actual conditions of confinement within SHU. *Palmer v. Richards*, 364 F.3d at 65 (citations omitted); *see also Wright v. Coughlin*, 132 F.3d at 137; *Brooks v. DiFasi*, 112 F.3d 46, 49 (2d Cir. 1997). If the conditions of confinement are undisputed, a court may decide the *Sandin* issue as a matter of law. *Palmer v. Richards*, 364 F.3d at 65. If, however, normal conditions of SHU exist, but the period of confinement is longer than the intermediate duration, then it would constitute a significant departure from ordinary prison life requiring the protection of procedural due process under *Sandin*. *Id*.

Once a prisoner makes a threshold showing of atypical and significant confinement, the court should determine whether that prisoner, prior to his confinement, was afforded the minimum requirements of due process. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). A prisoner placed in disciplinary segregation must be provided (1) advanced written notice of the charges against them at least twenty-four hours prior to the hearing; (2) the opportunity to appear at the hearing, to call witnesses, and to present rebuttal evidence; and (3) written statement as to the evidence relied upon and the reasons for the disciplinary action. *Id.* at 564-66; *see also Freeman v. Rideout*, 808 F.2d 949, 953 (2d Cir. 1986); *Taylor v. Rodriguez*, 238 F.3d 188, 192 (2d Cir. 2001) (quoting *Hewitt v. Helms*, 459 U.S. at 476).

With these principles in tow, we discuss the process that was provided at each of the

disciplinary hearings at issue *seriatim.*

### 1. Liberty Interest

Defendants concede that, in the aggregate, the amount of time Plaintiff spent in the solitary housing unit ("SHU"), as a result of the three disciplinary hearings at issue, was sufficient to implicate a protected liberty interest.[1] Dkt. No. 42-7, Defs.' Mem. of Law, at p. 11; *see also* Dkt. No. 42-4, Steven Bullis Decl., dated Dec. 26, 2013, at Ex. A, Disciplinary Hr'g Tr. (hereinafter "1st Hr'g Tr."), dated Oct. 13 – 18, 2010, at p. 1; Dkt. No. 42-5, Donald Haug Decl., dated Dec. 24, 2013, at Ex. A, Disciplinary Hr'g Report, dated Sept. 7–13, 2010;[2] Dkt. No. 42-6, Donald Uhler Decl., dated Dec. 27, 2013, at Ex. A, Disciplinary Hr'g Tr. (hereinafter "3rd Hr'g Tr."), dated February 2–3, 2011, at p. 1. Accordingly, we need only determine whether Plaintiff was deprived of any of the minimum requirements of due process during any of the disciplinary hearings at issue.[3]

---

[1] We agree. In the instant case, Plaintiff has alleged that he spent a total of 910 consecutive days in SHU as a result of the three disciplinary hearings at issue. Dkt. No. 39-2, Pl.'s Mem. of Law, dated Nov. 8, 2013, at p. 2. The Second Circuit has held that "[o]verlapping disciplinary penalties may, under some circumstances, have to be aggregated for purposes of determining whether a liberty interest was violated." *Reynoso v. Selsky,* 292 F. App'x 120, 122 (2d Cir. 2008) (citing *Sims v. Artuz,* 230 F.3d 14, 23-24 (2d Cir. 2000)); *see also Koehl v. Bernstein,* 2011 WL 2436817, at *7 (S.D.N.Y. June 17, 2011) (citing *Sealey v. Giltner,* 197 F.3d 578 (2d Cir. 1999), for the proposition that "the Second Circuit suggested that consecutive sentences resulting from separate hearings adjudicating different misbehavior reports should be aggregated for the purpose of determining whether the confinement constitutes atypicality.").

[2] A transcript of the September 7–13 disciplinary hearing was not provided to the Court as part of his disciplinary record.

[3] In addition to time in SHU, Plaintiff also lost several months of good time credits as a result of his disciplinary hearings. *See* 1st Hr'g Tr. at p. 1; Haug Decl., Ex. A, Disciplinary Hr'g Report; 3rd Hr'g Tr. at p. 1. Ordinarily, a prisoner cannot seek monetary damages for a due process violation arising out of a prison disciplinary hearing where the loss of good time credits affects the overall length of the plaintiff's sentence without first seeking a reversal or expungement of the disciplinary conviction. *See Heck v. Humphrey,* 512 U.S. 477, 486-87 (1994)) (holding "that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983."). However, in the instant case, Plaintiff is serving a life sentence, and accordingly, the loss of good time credits neither affects the overall length of his sentence nor prevents him from filing the instant action. *See* New York State Inmate Lookup for Inmate DIN # 96-A-0837, Leonard Hinton, **http://nysdoccslookup.doccs.ny.gov**

(continued...)

## 2. *First Disciplinary Hearing*

The following facts are undisputed.

On July 25, 2010, Sgt. Gower[4] issued a misbehavior report charging Plaintiff with extortion, soliciting a sexual act, and making a third party call. Defendant Bullis found Plaintiff guilty of all three violations, and sentenced him to six months in the SHU as well as six months loss of packages, commissary, phone, and good time credits. Dkt. No. 39-3, App. to Pl.'s Mot. for Summ. J. (hereinafter "Pl.'s App."), Sec. 1, at Ex. A, Misbehavior Rep., dated July 25, 2010 (hereinafter "1st Misbehavior Rep."); 1st Hr'g Tr. at p. 1. Plaintiff appealed the decision; but his appeal was denied by Defendant Prack, the Director of the Special Housing/ Inmate Disciplinary Program, on December 20, 2010. *See* Pl.'s App., Sec. I, at Exs. E, Appeal Form, dated Oct. 18, 2010; & F, Appeal Dec., dated Dec. 20, 2010. Subsequently, Plaintiff challenged the disciplinary determination, in State Court, pursuant to N.Y. C.P.L.R. § 7803 ("Article 78"). *Id.* at Ex. G, Pl.'s Art. 78 Pet., dated Dec. 29, 2010. The New York State Appellate Division, Fourth Department, denied Plaintiff's petition, and unanimously upheld Defendant Bullis's disciplinary determination. *Id.* at Ex. I, Dec., dated Nov. 9, 2012.

---

[3](...continued)
(last checked July 31, 2014); *see also Holmes v. Grant*, 2006 WL 851753, at *18 (S.D.N.Y. Mar. 31, 2006) (surveying cases in support of the proposition that "*Heck* [*v. Humphrey*] does not apply [w]here, . . . plaintiff is serving a life sentence, [because] the loss of good time credits . . . has no effect on the length of his sentence"); N.Y. CORR. LAW § 803(1)(a) (noting that inmates serving a maximum life sentence are not eligible for reduced sentence based on good behavior).

[4] Sgt. Gower was dismissed from this action by the Honorable Lawrence E. Kahn, Senior United States District Judge, during the Court's initial review on March 7, 2013. *See* Dkt. No. 4, Dec. & Order, dated Mar. 7, 2013, at p. 5. Nonetheless, Sgt. Gower was served with process and joined in Defendants' Answer. *See* Dkt. Nos. 7 & 23. In light of his earlier dismissal and notwithstanding the subsequent errors which occurred, the Clerk of the Court is ordered to terminate Sgt. Gower from this action.

Plaintiff now argues that he is entitled to summary judgment as to his claims against Defendants Bullis and Prack for violations of his right to due process in conjunction with this hearing, because Defendants lacked any credible evidence to support the decision or its subsequent affirmation. *See, e.g.,* Dkt. No. 44-1, Pl.'s Opp'n at p. 2.[5] Defendants argue that they are entitled to summary judgement as to this claim because Plaintiff was provided all of the process that was due. Dkt. No. 42-7, Defs.' Mem. of Law, at pp. 13–16.

### a. Notice

It is undisputed that Plaintiff was served with a copy of the misbehavior report on October 6, 2010. Pl.'s App., Sec. I, Ex. D, Hr'g Disposition. Accordingly, Plaintiff received notice, as required, more than twenty-four hours prior to his hearing. *See Sira v. Morton*, 380 F.3d 57, 70 (2d Cir. 2004) (citing, *inter alia*, *Wolff v. McDonnell,* 418 U.S. at 564 for the proposition that "[d]ue process requires that prison officials give an accused inmate written notice of the charges against him twenty-four hours prior to conducting a disciplinary hearing"). Moreover, the misbehavior report noted, *inter alia*: "[b]ased on an investigation [Sgt. Gower] conducted it has been determined that inmate Hinton . . . was attempting to solicit sexual acts and was attempting to extort money from a family member of inmate Veach . . . . Inmate Hinton also gave inmate Veach two packs of tobacco without authorization of any staff." 1st Misbehavior Rep. Such notice was adequate to inform Plaintiff of the nature of the offenses for which he was charged. *See Sira v. Morton,* 380 F.3d at 70 (quoting *Taylor v. Rodriguez,* 238 F.3d at193, for the proposition that "due process requires more than a conclusory charge; an inmate must receive notice of at least some specific facts underlying

---

[5] Document Number 42-1 is listed as Plaintiff's Affidavit. However, this document contains both sworn statements and legal arguments, in non-sequentially numbered paragraphs. Accordingly, we make reference to the page numbers assigned by Plaintiff.

the accusation such that he can prepare a defense to those charges and not be made to explain away vague charges set out in a misbehavior report.") (internal quotation marks omitted).[6]

### b. Opportunity to be Heard

The record clearly establishes that Plaintiff was present at the hearing, able to question witnesses, and present rebuttal evidence. *See generally* 1st Hr'g Tr. This remains true notwithstanding the fact that four of the witnesses Plaintiff called refused to testify. *See id.* at p. 10. Crucially, "it is well settled that [a]n inmate does not possess a constitutional right to confront or cross-examine witnesses in prison disciplinary hearings." *Fernandez v. Callens*, 2010 WL 4320362, at *11 (W.D.N.Y. Oct. 29, 2010) (citing *Wolff v. McDonnell,* 418 U.S. at 567–68; *Kalwasinski v. Morse,* 201 F.3d 103, 109 (2d Cir. 1999); & *Silva v. Casey,* 992 F.2d 20, 22 (2d Cir. 1993)). The fact that these witnesses refused to testify on Plaintiff's behalf does not alter the fact that he was given the opportunity to call witnesses. *See Creech v. Schoellkoph,* 688 F. Supp. 2d 205, 213 (W.D.N.Y. 2010) (finding no due process violation where two witnesses called by inmate refused to testify); *see also Edmonson v. Coughlin*, 1996 WL 622626, at *8 (W.D.N.Y. Oct. 4, 1996) (citing *Wolff v. McDonnell,* 418 U.S. at 568–69 for the proposition that "*Wolff* specifically recognized the discretion of prison officials to decline to call as witnesses fellow inmates who do not wish to testify,

---

[6] In his Article 78 proceeding, Plaintiff challenged the sufficiency of the notice on the grounds that it omitted the specific dates of the events in question. *See generally* Pl.'s App., Sec. I, Ex. H. While it does not appear that Plaintiff intended to re-raise that issue here, to the extent that he may have intended to do so, such an argument would be unavailing. Although the date of the misbehavior report was actually the date Sgt. Gower conducted his investigation rather than the date that the actual events giving rise to the report occurred, this omission was by no means fatal given the specific nature of the charges against Plaintiff. Indeed, it is clear that Plaintiff was able to understand the nature of the charges against him and to prepare a defense. *See id.* (finding that "the report provided adequate detail to apprise [Plaintiff] of the charges and afford him the opportunity to prepare his defense") (internal quotations and citation omitted); *see also Sira v. Morton*, 380 F.3d at 71 (citing *Quinones v. Ricks,* 288 A.D.2d 568, 568–69 (N.Y. App. Div. 2d Dep't 2001), for the proposition that "failure to include specific date in misbehavior report may be excused if the report otherwise provides sufficient details to permit the inmate to fashion a defense"); *Cepeda v. Urban*, 2014 WL 2587746, at *6 (W.D.N.Y. June 10, 2014) (reaching similar conclusion).

or witnesses who know nothing of the underlying events"); *Jamison v. Fischer*, 2013 WL 5231457, at *3 (S.D.N.Y. July 11, 2013) (citing cases for the proposition that "if a requested witness refuses to testify at a disciplinary hearing, the hearing officer is not constitutionally required to compel the witness to testify."). Moreover, in such situations, all that is required of the hearing officer is that he provide the inmate with notice of the fact that witnesses are being withheld and explain the reasons why. *See* N.Y. COMP. CODES R. & REGS. tit. 7, § 254.5(a) ("If permission to call a witness is denied, the hearing officer shall give the inmate a written statement stating the reasons for the denial, including the specific threat to institutional safety or correctional goals presented."). Here, Defendant Bullis explained at the hearing that:

> Mr. Hinton, on your assistant form you requested four potential witnesses. It is written down that they all refused to testify and in the file there are four refusal forms, one by inmate Maida . . . refuses to testify he does not want to be involved. Inmate King . . . states he does not want to be involved with any of this, he doesn't want to get involved with any of this don't call me again as stated on the form. The next is from inmate Woods . . . stating he does not want to be involved as he stated on the form. The next is for inmate Veach . . . stating he does not want to be involved he claimed he does not know anything about this incident on 7/28/2010.

1st Hr'g Tr. at p. 10.

Thus, we can find no evidence of any constitutional deficiency in Plaintiff's opportunity to appear, call witnesses, or present rebuttal evidence at the first disciplinary hearing. *See Wolff v. McDonnell*, 418 U.S. at 564-66.

<u>c. Written Decision</u>

It is clear from the record that at 11:15 a.m., on October 8, 2010, Plaintiff received a written statement as to the evidence relied upon and the reasons for the disciplinary action that was taken. Pl.'s App., Sec. I, Ex. D, Hr'g Disposition Form.

Therefore, under *Wolf v. McDonnell*, Plaintiff received all of the process due to him. 418

U.S. at 564-66.

### d. Remaining Arguments

Plaintiff also argues that there was no credible evidence to support Defendant Bullis's disciplinary determination. While an inmate is *not* entitled to a hearing officer with the same level of impartiality required by judges; it is true that he is entitled to a hearing untainted by arbitrary or pre-determined findings of guilt. *Francis v. Coughlin*, 891 F.2d 43, 46 (2d Cir. 1989). Nonetheless, a hearing officer's limited impartiality requirements are satisfied where the record contains "some evidence" to support the officer's findings. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached." *Id.*, 472 U.S. at 455-56 (citations omitted). That being said, only "'reliable' evidence can constitute 'some evidence.'" *Sira v. Morton*, 380 F.3d at 76 (citing *Luna v. Pico,* 356 F.3d at 488).

Here, Defendant Bullis's determination was supported by ample reliable evidence, chiefly, the testimony and misbehavior report of Sgt. Gower. *See* Pl.'s App., Sec. I at Ex. C.

As noted above, the misbehavior report stated, *inter alia*: "[b]ased on an investigation [Sgt. Gower] conducted it has been determined that inmate Hinton . . . was attempting to solicit sexual acts and was attempting to extort money from a family member of inmate Veach . . . . Inmate Hinton also gave inmate Veach two packs of tobacco without authorization of any staff." 1st Misbehavior Rep. At the hearing, Sgt. Gower explained, in sum and substance, that on the morning of July 25, 2010, an unidentified inmate told him that Plaintiff had attempted to solicit sex from Inmate Veach. As a result, Sgt. Gower conducted an investigation during which he interviewed

Inmate Veach, who reported that "approximately 2 weeks before that he got two packs of tobacco from [Plaintiff] he was unable to pay him so [Plaintiff] had requested he perform sexual acts for approximately ten days to pay him for the tobacco." 1st Hr'g Tr. at p. 6. Veach also informed Sgt. Gower that Plaintiff had attempted to pull him into a toilet stall but stopped when Inmate Moody walked into the bathroom area. Gower verified with Inmate Moody that he saw Veach and Hinton in the bathroom at the same time; however, Moody did not see Hinton pulling Veach into the stall. Gower ordered that Veach be examined by medical, and no evidence of sexual misconduct was found. Gower also testified that Veach informed him that Plaintiff and Inmate McGee had set up a three-way call in an attempt to extort fifteen dollars from Inmate Veach's sister for the tobacco. Gower reported that he verified this with inmate McGee who admitted to helping to orchestrate the three-way call. *Id.* at pp. 6–8.

Standing alone, the unidentified inmate's claims that Plaintiff solicited sex from Inmate Veach would be insufficient to satisfy the "some evidence" standard applicable to prison disciplinary hearings. *See Dawkins v. Gonyea*, 646 F. Supp. 2d 594, 611 (S.D.N.Y. 2009) (citing *Sira v. Morton*, 380 F.3d at 78, for the proposition that "if any confidential informant's testimony was based solely on hearsay, a greater inquiry into the reliability of this hearsay information is required."); *Howard v. Wilkerson*, 768 F. Supp. 1002, 1007 (S.D.N.Y. 1991) (citing *Vasquez v. Coughlin,* 726 F. Supp. 466, 471 (S.D.N.Y.1989), for the proposition that "[s]ince [*Superintendent* v.] *Hill*, [472 U.S. 445 (1985)] it has been held that hearsay evidence does not constitute 'some evidence'"). However, here, Defendant Bullis's determination was supported by Gower's misbehavior report. More importantly, Gower testified at the hearing that prior to issuing the misbehavior report he independently corroborated the statements made to him by the unidentified inmate and the victim.

Gower's investigation, report, and testimony were all valid bases from which Defendant Bullis could conclude that the information was reliable. *See Sira v. Morton*, 380 F.3d at 78 ("Where the original declarant's identity is unknown or not disclosed, the hearing officer may nevertheless consider such factors as the specificity of the information, the circumstances under which it was disclosed, and the degree to which it is corroborated by other evidence."). Since Defendant Bullis found Gower's testimony to be reliable, Bullis Decl. at ¶ 17, we need not conduct an independent assessment of Gower's credibility. *Kotler v. Daby*, 2013 WL 1294282, at * 10 (N.D.N.Y. Mar. 28, 2013) (finding guard's testimony and written report constituted some evidence, and that an independent assessment of the charging officer's credibility is neither required nor encouraged); *Thomas v. Connolly*, 2012 WL 3776698, at *23 (S.D.N.Y. Apr. 10, 2012) (finding that disciplinary determination supported by the investigating officer's report was sufficient to satisfy the some evidence requirement). Thus, we conclude that no reasonable juror could conclude that Plaintiff's disciplinary conviction was not based on some reliable evidence.[7]

Furthermore, Plaintiff's argument that Inmate Veach's statements to Sgt. Gower during his investigation are unreliable in light of the fact that Inmate Veach subsequently refused to testify at Plaintiff's hearing – reportedly, on the grounds that he knew nothing about the alleged incident – are also unavailing. *See* Pl.'s Mem. of Law at pp. 17–20; Pl.'s App., Sec. I, Ex. C, Inmate Refusal Form, dated Oct. 8, 2010; *see also Louis v. Ricks*, 2002 WL 31051633, at *13 (S.D.N.Y. Sept. 13, 2002) (surveying cases for the proposition that no due process violation occurred where the hearing

---

[7] Indeed, the New York State Appellate Division, Fourth Department, held that the evidence adduced at Plaintiff's disciplinary hearing was sufficiently adequate to meet the "substantial evidence" standard; a burden which is much higher than the "some evidence" standard applicable to the instant action. *See* Pl.'s App., Sec. I, Exs. H, Dec. & Order, dated Oct. 26, 2011; & I, Order, dated Nov. 9, 2012; *Smith v. Fischer*, 2010 WL 145292, at *9 (N.D.N.Y. Jan. 11, 2010) (citing *Sira v. Morton,* 380 F.3d at 76 n. 9, for the proposition that the substantial evidence ""requirement is sterner than the 'some evidence' standard necessary to afford due process""").

assistant relied on testimony from the alleged victim which the victim later recanted).[8]

Accordingly, having determined that Plaintiff received all of the process that was due to him with regard to his first disciplinary hearing, we recommend that Plaintiff's Motion for Summary Judgment be **DENIED** as to this claim, that Defendants' Cross-Motion for Summary Judgment be **GRANTED**, and that this claim be **DISMISSED.**

### e.  Defendant Prack

Plaintiff alleges that Defendant Prack was liable in his supervisory capacity for Defendant Bullis's alleged due process violation because he knew of but failed to remedy the violation when he affirmed Defendant Bullis's disciplinary determination.  Pl.'s Mem. of Law at p. 25.  An individual cannot be held liable for damages under § 1983 merely because he holds a position of authority, but he can be held liable if he was personally involved in the alleged deprivation.

> The personal involvement of a supervisory defendant may be shown by evidence that:  (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citations omitted).

However, having failed to find any evidence of an underlying constitutional violation, we recommend that Plaintiff's Motion for Summary Judgment be **DENIED** as to Plaintiff's claim

---

[8] It is also worth noting that it is not entirely clear that Inmate Veach's refusal to testify was actually a recantation of his earlier statements to Sgt. Gower.  Inmate Veach stated in his refusal form that he knew nothing about any incident which occurred on July 25, 2010.  Pl.'s App., Sec. I, Ex. C, Inmate Refusal Form, dated Oct. 8, 2010. However, July 25, 2010 was the day that Sgt. Gower was informed about the alleged violations, not the dates that the alleged violations occurred.  *See supra* Note 6.  Thus, this statement is not necessarily at odds with Veach's earlier statements to Sgt. Gower.

*-15-*

against Defendant Prack arising out of his affirmation of Defendant Bullis's disciplinary determination. *See Elek v. Inc. Vill. of Monroe*, 815 F. Supp. 2d 801, 808 (S.D.N.Y. 2011) (collecting cases for the proposition that "because Plaintiff has not established any underlying constitutional violation, she cannot state a claim for § 1983 supervisor liability"). Furthermore, we also recommend that Defendants' Motion be **GRANTED** with respect to the same, and that this claim be **DISMISSED.**

### 3. Second Disciplinary Hearing

The following facts are undisputed.

On August 11, 2010, Plaintiff was charged with violent conduct, assault on an inmate, and fighting by Sergeant Betti, and violent conduct, creating a disturbance, and fighting by Corrections Officer Ruggerio.[9] According to Sergeant Betti's report "inmate Hinton admitted to [her] that he had a verbal argument with inmate Burton over some missing food items. He said the argument ended with him picking up a frying pan and hitting inmate Burton once over the head with it." Haug Decl., Ex. A, Betti Misbehavior Rep., dated Aug. 11, 2010. According to Officer Ruggerio, on August 11, he heard a crashing noise in the room near the kitchen, and upon responding "observed inmate Hinton lying on his left side . . . near his overturned wheelchair. . . . [He] also observed Inmate Burton standing over Hinton with a clinched fist. There was also a medium sized stainless steel frying pan lying near [Hinton's wheelchair]." *Id.*, Ex. A, Ruggerrio Misbehavior Rep., dated Aug. 11, 2010.

Defendant Haug conducted a disciplinary hearing between September 7 and 13, 2010, and found Plaintiff guilty of all six violations. Decl., Ex. A, Hr'g Disposition, dated Sept. 13, 2010. On

---

[9]Neither Sergeant Betti nor Corrections Officer Ruggerio are Defendants in this action.

November 12, 2010, Defendant D. Venettozzi, the Acting Director of the Special Housing/Inmate Disciplinary Program, affirmed the disciplinary determination. *Id.* at Ex. C, Appeal Dec., dated Nov. 12, 2010. However, as a result of an Article 78 proceeding brought by Petitioner before the Fourth Department, the determination was overturned and vacated because "the hearing officer's effective denial of petitioner's request to call C.O. Ruggerio, Inmate Burton, Captain Scarafile and Deputy Superintendent Kinderman[10] as witnesses, without [] stated good faith reasons, constituted a clear constitutional violation[.]" *Id.* at Ex. C, Dec. & J., dated May 27, 2011. As a result, Plaintiff's September 13 disciplinary decision was administratively reversed on August 4, 2011. *Id.* at Ex. B, App. Dec., dated Aug. 4, 2011.

In his Motion, Plaintiff claims he is entitled to summary judgment as to his due process claims against Defendant Haug because he was improperly denied the right to call witnesses on his behalf, and against Defendant Venettozzi for affirming Defendant Haug's disciplinary determination. *See* Pl.'s Opp'n at p. 5. Defendants argue that they are entitled to summary judgment on this claim because Plaintiff received all of the process that was due at his second disciplinary hearing. Defs.' Mem. of Law at pp. 17–19.

### a. Notice

It is uncontested that Plaintiff received a copy of the misbehavior reports at issue on August 12, 2010. Haug Decl. at ¶ 9 & Ex. A, Tier III Data Sheet, dated Aug. 22, 2010. Furthermore, each report contained a detailed factual account of the basis of the charges, the names of those involved, and the date of the relevant events. *Id.* at Ex A, Misbehavior Reports, dated Aug. 11, 2010. Accordingly, Plaintiff clearly received constitutionally sufficient notice.

---

[10] These individuals are not Defendants in the instant action.

*-17-*

<u>b.  Opportunity to be Heard</u>

According to the Fourth Department, the "denial of petitioner's request to call C.O. Ruggerio, Inmate Burton, Captain Scarafile and Deputy Superintendent Kinderman as witnesses, without a stated good faith reason[], constituted a clear constitutional violation." *Id.* at Ex. B, Dec. & J. at p. 5.  As a result of the Fourth Department's decision, Plaintiff's disciplinary determination was subsequently administratively overturned.  However, neither of these facts is dispositive for purposes of the instant action. *Gutierrez v. Coughlin*, 841 F.2d 484, 486 (2d Cir. 1988) (citing cases for the proposition that collateral estoppel does not preclude defendants from re-litigating due process violations decided in an Article 78 proceeding in a subsequent 1983 case because, *inter alia*, "appellees could not have been held personally liable in such a proceeding, they did not have the same incentive to litigate that state court action as they did the federal § 1983 action[,]" and "the defenses of absolute or qualified immunity, or lack of personal involvement, were not available to appellees"); *see also LaTorres v. Selsky*, 2011 WL 7629515, *6 n.10 (N.D.N.Y. Aug. 1, 2011) (citing *Guitierrez v. Coughlin*).

Moreover, Plaintiff's claim is subject to review for harmless error.  *Sims v. Artuz*, 103 F. App'x 434, 436 (2d Cir. 2004) (upholding magistrate's determination applying harmless error to defendant's undisputed failure to provide a reason for refusing to call witnesses during a disciplinary hearing); *Clark v. Dannheim*, 590 F. Supp. 2d 426, 431 (W.D.N.Y. 2008) (same); *Colantuono v. Hockeborn*, 801 F. Supp. 2d 110, 115 (W.D.N.Y. 2011) (citing *Clark v. Dannheim*, 590 F. Supp. 2d 426, (W.D.N.Y. 2008), for the proposition that "dismissing state prisoner's due process claim based on the hearing officer's denial of plaintiff's requests to review certain medical records, and to call DOCS sergeant as a witness, where plaintiff failed to demonstrate that he was prejudiced as a

result"); *cf. Powell v. Coughlin,* 953 F.2d 744, 751 (2nd Cir. 1991) ("it is entirely inappropriate to overturn the outcome of a prison disciplinary proceeding because of a procedural error without making the normal appellate assessment as to whether the error was harmless or prejudicial").

Here, notwithstanding the fact that a denial of the right to call witnesses without an explanation is a violation of New York's prison disciplinary regulations, N.Y. COMP. CODES R. & REGS. tit. 7, § 254.5(a), Defendant Haug's decision to deny, without reason, Plaintiff's request to call as witnesses Deputy Superintendent Geoghegan, Captain Scarafile, and Officer Rugerio did not rise to the level of a due process violation because Plaintiff failed to allege, in any fashion, how he was prejudiced. Indeed, it is undisputed that Deputy Superintendent Geoghegan and Captain Scarafile had no personal knowledge of the event; their only involvement was that they were informed about the alleged fight after the fact. Haug Aff. at ¶ 18 & Ex. A, Unusual Incident Report, dated Aug. 19, 2010, at p. 2. Similarly, Officer Ruggerio's misbehavior report confirms that he arrived on scene after the event, and the details of his report are nearly identical to those provided by Officer Betti, who testified at the hearing. *Id.* at ¶¶ 10 & 16–17, & Ex. A, Misbehavior Reports. Accordingly, their testimony was at best cumulative, and quite possibly irrelevant. *See Hamilton v. Fischer,* 2013 WL 3784153, at *10 (W.D.N.Y. July 18, 2013) (dismissing due process claims based on a hearing officer's failure to call witness who were not present for the incident at issue because the error was harmless).

Likewise, the record in this case compels us to reach a similar conclusion with regard to the fourth witness, Inmate Burton, although by a slightly different route. With respect to his decision to deny Plaintiff's request to call Inmate Burton, Defendant Haug avers that "I have no recollection of who that inmate was or why his testimony would have had any bearing on whether or not Plaintiff

Hinton hit another inmate with a frying pan. Had I believed that this inmate had information that was pertinent to Plaintiff Hinton's defense, I would have requested his testimony." *Id.* at ¶ 19. It cannot seriously be argued that Inmate Burton, the inmate Plaintiff allegedly hit over the head with the frying pan, did not have any relevant information with regard to the incident at issue.

However, nothing in Plaintiff's papers[11] nor the many documents submitted by Defendants indicates that had Inmate Burton been called his testimony would have altered the course of the hearing. Rather, based on the record before us, we can only conclude the opposite. In the Fight Investigation Rep., dated August 11, 2010, Sergeant Betti reported that "Burton stated [that] Hinton approached him in the day room and was yelling at him for no reason. Hinton hit him with a pan in the head." Haug Decl., Ex. A. Crucially, Burton's statement was relied upon by Defendant Haug. *Id.*, Ex. A, Hr'g Disposition Report, dated Sep. 13, 2010, at p. 2.

Given the lack of any indication in the record that Inmate Burton would have testified favorably, as well as his own admissions to Sergeant Betti that he struck Inmate Burton with the pan, Plaintiff has failed to establish that he was prejudiced by Defendant Haug's refusal to call Inmate Burton as a witness. *See Clark v. Dannheim*, 590 F. Supp. 2d at 430–31 (concluding, after examining the record, that failure to call a witness who had clearly relevant information was non-prejudicial because "there [wa]s no indication or reason to believe that his testimony would have been helpful to plaintiff"); *see also Sims v. Artuz*, 103 F. App'x at 436 (upholding magistrate's determination that exclusion of witnesses from disciplinary hearing was harmless error where

---

[11] It is clear from Plaintiff's Opposition to Defendant's Cross-Motion for Summary Judgment that Plaintiff was aware of Defendants' claim that he failed to identify how he was prejudiced by Defendant Haug's failure to call these witnesses. *See* Pl.'s Opp'n at pp. 6–7. However, rather than explain how he was prejudiced, Plaintiff argued that the Article 78 determination constituted "law of the case" and that Defendants' reliance on the harmless error standard was misplaced. *Id.*

plaintiff "ha[d] not shown that he was prejudiced in any way"); *Tafari v. Rock*, 2012 WL 1340799 (W.D.N.Y. Apr. 18, 2012) ("A prisoner cannot demonstrate prejudice and thus non-harmless error based upon pure speculation.").

### c. Written Decision

It is undisputed that Plaintiff received a copy of the notice of decision including the evidence that was relied upon, as well as an explanation of the reasons for the punishment assigned. *Id.* at Ex. A, Hr'g Disposition Form, dated Sep. 13, 2010, at p. 2.

Accordingly, we recommend that Plaintiff's Motion be **DENIED** as to his due process claim against Defendant Haug arising out of the second disciplinary hearing, that Defendants' Cross-Motion be **GRANTED** with respect to the same, and that this claim be **DISMISSED**.

### d. Defendent Venettozzi

Having established the absence of any underlying constitutional violation, Plaintiff cannot maintain a cause of action against Defendant Venettozzi based on supervisory liability for affirming Defendant Haug's disciplinary determination. *See Elek v. Inc. Vill. of Monroe*, 815 F. Supp. 2d at 808.

Accordingly, we recommend that Plaintiff's Motion for Summary Judgment be **DENIED** with respect to his claim against Defendant Venetozzi for affirming Defendant Haug's disciplinary determination, that Defendants' Cross-Motion for Summary Judgment be **GRANTED** as to the same, and that this claim be **DISMISSED**.

### 4. Third Disciplinary Hearing

The following facts are undisputed.

On January 19, 2011, Plaintiff was charged with two counts of possessing unauthorized

medication and smuggling. 3rd Hr'g Tr. at p. 1. On February 2–3, 2011, Defendant Uhler conducted a Tier III disciplinary hearing, from which Plaintiff was excluded. *See generally id.* Plaintiff was convicted of all three offenses and sentenced to thirty-six months in SHU as well as thirty-six months loss of packages, commissary, phone, and good time credits. *Id.* at p. 1. On February 3, 2011, Plaintiff appealed Defendant Uhler's disciplinary determination. Compl. at p. 6. On March 29, 2011, Defendant Venettozzi modified Plaintiff's punishment to eighteen months SHU and corresponding loss of privileges. Uhler Decl., Ex. B, Appeal Dec., dated Mar. 29, 2011. On June 21, 2011, Defendant D. Rock, Superintendent of Upstate Correctional facility, refused Plaintiff's request for discretionary review of his disciplinary determination. *Id.* at Ex. C, Lt., dated June 21, 2011.

On June 30, 2011, Plaintiff filed an Article 78 petition challenging the disciplinary determination. On December 2, 2012, the Honorable S. Peter Feldstein, Acting Supreme Court Justice in Franklin County, New York, determined that "the hearing officer did not err in conducting the Tier III Superintendent's Hearing in the absence of petitioner." Pl.'s App. at Sec. III, Ex. A, at p. 4. However, Judge Feldstein found that Plaintiff "must prevail" as to his argument that "he did not receive a copy of the written hearing disposition sheet, including the statement of evidence relied upon by the hearing officer, and the statement of reason(s) for the disposition imposed." *Id.* at pp. 5–6. Judge Feldstein further noted that prison officials should "process any additional administrative appeal from the results and disposition of the Tier III Superintendent's Hearing concluded February 3, 2011 that petitioner files within 30 days service" of his decision. *Id.* at p. 6.

Plaintiff contends that he is entitled to summary judgment against Defendant Uhler because he held the third disciplinary hearing in Plaintiff's absence and because he failed to provide Plaintiff

with written notice of the disciplinary determination and the evidence on which it was based. Pl.'s Mem. of Law at pp. 25–27. Plaintiff further claims that Defendants Venettozzi, Prack, and Rock were personally involved in depriving him of his due process right because they affirmed Defendant Uhler's determination. Pl's Opp'n at ¶ 53. Defendants argue that they are entitled to summary judgment on this claim because Plaintiff received all of the process that was due at the subsequent disciplinary hearing. Defs.' Mem. of Law at pp. 20–24.

### a. Notice

Plaintiff concedes that he "receive[d] advance notice of the charges, by service of the misbehavior report." Dkt. No. 39-2, Pl.'s Mem. of Law, at ¶ 34.

### b. Opportunity to be Heard

Originally, Plaintiff contended that Defendant Uhler violated his right to due process by unlawfully excluding him from attending the third disciplinary hearing. Pl.'s Mem. of Law at pp. 25–27. However, Plaintiff has since conceded that he is barred from re-litigating this issue in the instant matter by the doctrine of collateral estoppel.[12]

A review of Judge Feldstein's decision reveals that he indeed already considered the issue of whether "the Tier III Superintendent's Hearing was unlawfully conducted in his absence" in Plaintiff's Article 78 action. Pl.'s App. at Sec. III, Ex. A, at p. 3. Judge Feldstein noted that, "an inmate has a fundamental right to be present at a Superintendent's Hearing unless he or she refused

---

[12] On July 18, 2014, we stayed the parties pending Cross-Motions for Summary Judgment and ordered them to brief the Court as to whether Judge Feldstein's prior conclusion in Plaintiff's Article 78 action, that Plaintiff was properly excluded from his disciplinary hearing based on his failure to conform to facility security protocols, precluded him from arguing in the instant case that he was unlawfully excluded from attending the third disciplinary hearing. Dkt. No. 54, Order, dated July 18, 2014. In his Reply to the Defendants' Letter-Brief, Plaintiff conceded that Judge Feldstein's determination in this regard does preclude him from re-raising this issue in the instant matter. *See* Dkt. Nos. 55, Defs.' Lt.-Br., dated July 21, 2014, & 56, Pl.'s Reply Lt.-Br., dated July 25, 2014.

to attend, or is excluded for reasons of institutional safety or correctional goals." *Id.* (internal quotations, alterations, and citations omitted). After considering the evidence before him, including a transcript of the hearing conducted in Plaintiff's absence – containing on-the-record testimony from multiple prison officials stating, in sum and substance, that they made every effort to bring Plaintiff to his disciplinary hearing but Plaintiff refused to comply with prison handcuffing procedures – Judge Feldstein concluded that "the hearing officer did not err in conducting the Tier III Superintendent's Hearing in the absence of petitioner." *Id.* at pp. 3–6.

Crucially, and in keeping with the standard applied by Judge Feldstein, it is well established federal precedent that an inmate's refusal to attend a disciplinary hearing waives his due process objections where it occurs through no fault of prison authorities. *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 380 (N.D.N.Y. 2010) (citing *Howard v. Wilkerson,* 768 F. Supp. 1002, 1006 (S.D.N.Y. 1991)). Accordingly, Judge Feldstein's conclusion that Plaintiff's own actions justified holding the hearing in his absence is entitled to preclusive effect in the instant action.[13] *See Williams v. Pepin*, 2011 WL 7637552, *6 (N.D.N.Y. Dec. 23, 2011) (holding that plaintiff's due process claims which were rejected in an earlier Article 78 action were precluded from being re-litigated in a subsequent § 1983 action under the doctrine of collateral estoppel).

Accordingly, Plaintiff's due process rights were not violated when his third disciplinary hearing was held in his absence.

---

[13] Moreover, even if the issue were not precluded, it is unlikely that Plaintiff's claim would have succeeded because Plaintiff fails to allege any resulting prejudice from this alleged error. *See Lunney v. Brureton*, 2007 WL 1544629, at *28 (S.D.N.Y. May 29, 2007) (citing *Powell v. Coughlin,* 953 F.2d 744, 750 (2d Cir.1991) for the proposition that "[p]rison disciplinary hearings are subject to a harmless error analysis."). Indeed, Plaintiff fails to allege that had he been offered the opportunity, he would have presented evidence or called witnesses on his own behalf, let alone that such evidence would have been likely to affect the outcome of his disciplinary determination.

<u>c. Some Evidence</u>

It is clear that Defendant Uhler's disciplinary determination was supported by sufficient reliable evidence. Specifically, Defendant Uhler read the following into the record:

> The first report is by Officer Gravlin. . . . On 1/19/11 at approximately 9:45 AM, I conducted a pat frisk of inmate Hinton . . . on 11 A 1 Gallery. . . . Inmate Hinton had a total of 29 pills in his front right pocket. The block nurse identified the pills as neurontin, baclofen. Both are prescription medication given to the inmate on medication rounds. . . . The second Report [states] . . . January 19th, 2011 10:20 A.M. . . . On the above date and time I CO Bogardus . . . was helping give inmate Hinton his level one property after being transferred from eleven building to ten building. As I was going through the letters I noticed envelopes with no addresses with objects in them sealed. I opened the envelopes and found pills. After opening all the envelopes I took the pills to the block Nurse Holmes identified them and counted them which is what came up with [sic] 319 neurontin 600 milligram, 205 baclofen 10 milligram, 100 amlodipine 5.

3rd Disciplinary Hr'g Tr. at p. 4.

Given the specificity of these reports as well as the fact that they were authored by officers with first hand knowledge of the events, no rational juror could conclude that Defendant Uhler lacked sufficient reliable evidence to support his determination. *See Thomas v. Connolly*, 2012 WL 3776698, at *23; *Creech v. Schoellkoph*, 688 F. Supp. 2d 205, 214-15 (W.D.N.Y. 2010) (finding disciplinary determination relying on misbehavior report was sufficient for purposes of "some evidence" standard where "the misbehavior report was made by the officer personally involved in the . . . incident, and is based on his first hand observation, and contains a detailed account of that incident, including the time, place, circumstances, and names of participants").

<u>d. Written Decision</u>

It is undisputed that Plaintiff did not receive a formal written statement of the third disciplinary determination "until at least six months after the hearing was actually held." Pl.'s

Opp'n at Ex. A, Hinton Aff.[14]

It is clear that Plaintiff's due process rights were violated by Defendants' failure to provide him with a copy of this statement. *See Lunney v. Brureton*, 2007 WL 1544629, at *28 (S.D.N.Y. May 29, 2007) (surveying cases for the proposition that "the right to receive a written statement of the disposition is a requirement that has been in place since the Supreme Court's decision in *Wolff v. McDonnell*") (internal quotation marks, alterations, and citations omitted). However, notwithstanding this violation, Plaintiff is not entitled to anything other than nominal damages in the instant case because he has failed to establish an actual injury. *See McCann v. Coughlin*, 698 F.2d 112, 126 (2d Cir. 1983) (citing *Carey v. Piphus*, 435 U.S. 247, 266-67 (1978), for the proposition that "[i]t is well established that to collect compensatory damages in an action brought pursuant to 42 U.S.C. § 1983, a plaintiff must prove more than mere violation of his constitutional rights. He must also demonstrate that the constitutional deprivation caused him some actual injury"); *Thomas v. Annucci*, 2008 WL 3884371, at *5 (N.D.N.Y. Aug. 19, 2008) (citing, *inter alia*, *McCann v. Coughlin* for the same proposition).

Here, notwithstanding the fact that Plaintiff's constitutional rights were violated, he cannot establish actual injury. To begin with, Plaintiff cannot argue that the failure to provide him with a written notice of the determination caused him to be sentenced to a term of SHU imprisonment; indeed, that determination was made before the duty to provide Plaintiff with a copy of the notice even arose. *Cf. McCann v. Coughlin*, 698 F.2d at 126 (noting that "the failure to provide McCann

---

[14] Defendants fail to adequately contest Plaintiff's contention that he was not served a written copy of the determination; indeed, with the exception of their unsupported statement that they "[d]eny information and belief about when plaintiff received a copy of the hearing determination," they fail to address the issue whatsoever. *See* Dkt. No. 42-1, Defs.' Reply to Pl.'s 7.1 Statement, at ¶ 35; *see also Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991) (finding that mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment).

with a written statement of the Committee's decision and underlying reasons could not have caused his injury. If he had received such a written statement, it would have been after the Committee rendered its decision."). Thus, in order to establish that the Defendants' failure to provide him with a copy of the notice caused him actual injury, Plaintiff would have to show that because he did not have access to the information contained in the notice, he was unable to mount a meritorious appeal, and therefore, was forced to remain in SHU longer than necessary. *Cf. Miner v. City of Glens Falls*, 999 F.2d 655, 660 (2d Cir. 1993) (citing *McCann v. Coughlin*, 698 F.2d at 126, for the proposition that "[i]n this Circuit, the burden is normally on the plaintiff to prove each element of a § 1983 claim, including those elements relating to damages. . . . It was therefore Miner's burden to show that the property or liberty deprivation for which he sought compensation would not have occurred had proper procedure been observed.").

Yet, despite the fact that he ultimately received a copy of the notice prior to commencing the instant action, Plaintiff fails to allege that had he known the evidentiary basis for his conviction as contained in the notice earlier, he would have been able to successfully appeal the determination. Indeed, according to his Complaint, despite the fact that Judge Feldestein explicitly granted him the right to file additional appeals after he had obtained a copy of the notice, his subsequent attempts were unsuccessful. *See* Compl. at p. 6; *see also* Pl.'s App. at Sec. III, Ex. A, at pp. 5–6.[15] Thus, Plaintiff's claim fails because he cannot establish that the failure to provide him with a copy of the

---

[15] Plaintiff also claims that he initially appealed his disciplinary determination on February 3, 2011, the day that it was imposed. Compl. at p. 6. However, he provides conflicting and wholly inadequate explanations for the type and content of the notice he received. *See id.* at p.8 n.3; *see also* Pl.'s Opp'n at Ex. A, Hinton Aff. And, although it is unclear what the bases of Plaintiff's February 3 appeal were, it is axiomatic that Plaintiff would have known at that time that he was excluded from the hearing and had not received proper notice, and accordingly, the lack of notice did not prevent him from raising either of these grounds at that time. Moreover, as a result of this appeal, Plaintiff's disciplinary determination was modified, and his sentence was reduced from thirty-six months SHU to eighteen months. Pl.'s Mem. of Law at p. 26; Uhler Decl. at Ex. B, Review of Sup't Hr'g, dated Mar. 29, 2011.

hearing disposition in a timely manner caused him to suffer any actual injury.[16]

Moreover, Plaintiff is not entitled to punitive damages in the instant action. "Courts may award punitive damages in situations where a defendant's conduct is 'willful or malicious,' or where defendants have demonstrated 'reckless intent' or 'callous indifference.'" *Giano v. Kelly*, 2000 WL 876855, at *26 (W.D.N.Y. May 16, 2000) (quoting *Memphis Comty. School Dist. v. Stachura,* 447 U.S. 299, 306 (1986)). Here, nothing in the record establishes that Defendant Uhler acted maliciously or willfully with regard to his failure to provide Plaintiff with a copy of the notice. Therefore, the court recommends **DENYING** plaintiff's request for punitive damages.

Having failed to establish any actual injury, Plaintiff is only entitled to receive nominal damages in the amount of one dollar. *McCann v. Coughlin*, 698 F.2d at 126. Accordingly, we recommend that Defendants' Cross-Motion for Summary Judgment be **GRANTED** as to Plaintiff's claim that he was unlawfully excluded from the third disciplinary hearing and **DENIED** as to Plaintiff's claim that he was not provided with a copy of the hearing disposition in a timely manner. We further recommend that Plaintiff's Motion for Summary Judgment be **GRANTED** with respect to his claim that Defendants failed to provide him with a written disposition of the third disciplinary hearing, and that, in full satisfaction of his constitutional deprivation, he be awarded the sum of one dollar in nominal damages.

---

[16] To be sure, we are not positing that the relief Plaintiff received from his Article 78 action somehow extinguished any due process violation that he may have suffered between the time that violation accrued, and the time the Article 78 Petition was granted in his favor. Rather, we are merely noting the fact that Plaintiff was unable to file a successful administrative grievance appeal at the prison once he was provided with a copy of the formal notice as evidence that nothing within the notice provided Plaintiff with a meritorious ground for appeal. Therefore, the fact that he did not receive the formal notice sooner did not prejudice him. *Compare Bogle v. Murphy*, 2003 WL 22384792, at *5 (W.D.N.Y. Sept. 9, 2003) (noting that once a due process violation accrues, a subsequent Article 78 determination in the plaintiff's favor does not rectify the harm caused); *with Lunney v. Brureton*, 2007 WL 1544629, at *27–29 (dismissing due process claim based on undisputed failure to provide timely written disposition to plaintiff, in part on the basis that after receiving a transcript of the hearing, which included a statement of the evidence relied upon, Plaintiff failed to add any new substantive arguments).

<u>e.  Defendants Venettozzi, Prack, and Rock</u>

Plaintiff claims that "[s]ince Venettozzi, Prack[,] and Rock all had [a] hand in affirming the [third disciplinary] decision, they as well are liable." Pl.'s Mem. of Law at p. 27.  Courts within the Second Circuit are split over whether the mere allegation that a supervisory official affirmed a disciplinary determination is sufficient to establish personal liability.  We subscribe to the affirmance plus standard, which holds that the mere rubber-stamping of a disciplinary determination is insufficient to plausibly allege personal involvement.  *See Brown v. Brun*, 2010 WL 5072125, at *2 (W.D.N.Y. Dec. 7, 2010) (noting that courts within the Second Circuit are split with regards to whether the act of affirming a disciplinary hearing is sufficient to allege personal involvement of a supervisory official, and concluding that the distinction appears to hinge upon whether the official proactively participated in reviewing the administrative appeal or merely rubber-stamped the results).  Here, Plaintiff fails to make a single non-conclusory allegation from which a reasonable juror could conclude that Defendants Venettozzi, Prack, and Rock did anything other than rubberstamp Plaintiff's disciplinary determination.

Accordingly, we recommend that Plaintiff's Motion for Summary Judgment as to his claims against Defendants Venettozzi, Prack, and Rock, for affirming the third disciplinary disposition be **DENIED**, and that Defendants' Motion be **GRANTED** with respect to the same, and that this claim be **DISMISSED.**

## B.  Qualified Immunity

Defendants argue that they are entitled to qualified immunity.  Defs.' Mem. of Law at pp. 23–24.  However, given that we have recommended dismissing all of Plaintiff's claims except his claim against Defendant Uhler, we do not discuss whether any of the other Defendants are entitled

to qualified immunity.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."). However, some limited discussion is necessary with regard to Plaintiff's due process claim against Defendant Uhler for the failure to provide Plaintiff with a written copy of the disposition.

The doctrine of qualified immunity shields public officials from suit for conduct undertaken in the course of their duties if it "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Eng v. Coughlin*, 858 F.2d 889, 895 (2d Cir. 1988).  Whether an official protected by qualified immunity may be held liable for an alleged unlawful action turns on the objective legal reasonableness of the action assessed in light of the legal rules that were clearly established at the time the action was taken. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987); *Lewis v. Cowan*, 165 F.3d 154, 166 (2d Cir. 1999).  Until recently, courts faced with qualified immunity defenses have applied the procedure mandated in *Saucier v. Katz*, 533 U.S. 194 (2001).  That case set forth a two-pronged approach whereby the court must first decide whether the facts alleged, or shown, make out a violation of a constitutional right.  If yes, the court must then decide whether the right at issue was "clearly established" at the time of the alleged misconduct. *Saucier v. Katz*, 533 U.S. 194 at 201-02. Recently, however, the Supreme Court softened the rigid approach enunciated in *Saucier*.  *See Pearson v. Callahan*, 555 U.S. 223 (2009).  Now, the *Saucier* two-pronged test is not mandated in terms of the order in which the prongs may be addressed, though the sequence of review may remain appropriate or beneficial. *Id*. at 818.

To determine whether a right was clearly established for purposes of qualified immunity,

courts must consider "whether the right was defined with reasonable specificity; whether decisional law of the Supreme Court and the [Second Circuit] supports its existence; and whether, under preexisting law, a defendant official would have reasonably understood that his [or her] actions were unlawful." *Rodriguez v. Phillips*, 66 F.3d 470, 476 (2d Cir. 1995); *see also Nicholas v. Miller*, 189 F.3d 191, 195 (2d Cir. 1999).

A party is entitled to summary judgment on qualified immunity grounds if the court finds that the rights asserted by the plaintiff were not clearly established, or that "no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiff[], could conclude that it was objectively unreasonable for the defendant to believe that he was acting in a fashion that did not clearly violate an established federally protected right." *Lee v. Sandberg*, 136 F.3d 94, 102 (2d Cir. 1997) (citations omitted).

As discussed *supra*, the right to receive a written copy of the hearing disposition, including the evidence relied upon and the reasons for the sentence, has been clearly established since *Wolff v. McDonnell*. *Lunney v. Brureton*, 2007 WL 1544629, at *28. Moreover, no rational juror could conclude that it was objectively reasonable for Defendant Uhler not to provide Plaintiff with a copy of his third disciplinary hearing disposition. Accordingly, Defendant Uhler is not entitled to qualified immunity with respect to this claim.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Plaintiff's Motion for Summary Judgment (Dkt. No. 39) be **GRANTED** in part and **DENIED** in part as follows:

1.    **GRANTED** to the extent that Plaintiff is entitled to summary judgment as to the issue of whether Defendant Uhler violated his right to due process by

failing to provide him with a copy of the hearing disposition from his third disciplinary hearing, **HOWEVER**, in light of Plaintiff's inability to establish actual injury, we further recommend that he be awarded nominal damages in the amount of one dollar; and

2.     **DENIED** in all other respects; and it is further

**RECOMMENDED**, that Defendants Cross-Motion for Summary Judgment (Dkt. No. 42) be **GRANTED** in part and **DENIED** in part as follows:

1.     **DENIED** with respect to Plaintiff's due process claim against Defendant Uhler for his failure to provide Plaintiff with a copy of his hearing disposition from the third disciplinary hearing; and

2.     **GRANTED**, with respect to all of Plaintiff's other claims, which should be **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court **TERMINATE** Sgt. Gower from this action;[17] and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.</u>**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72 & 6(a).

Date:   August 14, 2014

_____

[17] *See supra* Note 4.

Albany, New York


Randolph F. Treece
U.S. Magistrate Judge